## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                                        Crim. No. 05-368(3) (JRT/FLN)

                          Plaintiff,

v.                                  **MEMORANDUM OPINION AND ORDER**
                                    **DENYING DEFENDANT'S MOTIONS**

CHE LAMAR ROMERO,

                          Defendant.

Katharine T. Buzicky, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55414, for plaintiff.

Che L. Romero, Reg. No. 21050-034, 3824 Cattail Marsh Court, Apartment 249, Palm Harbor, FL 34684 *pro se* defendant.

Defendant Che Lamar Romero is serving a 72-month sentence for aiding and abetting arson, aiding and abetting possession of an unregistered firearm, aiding and abetting illegal manufacture of a firearm, and aiding and abetting possession of a firearm with no serial number.[1]   Romero, via multiple motions pursuant to 18 U.S.C. § 3582(c)(1)(A), moves the Court to reduce his sentence and to appoint him counsel. Alternatively, Romero asks the Court to grant his petitions for a writ of audita querela and for a writ of error coram nobis.

---

[1] Romero is also serving a 235-month sentence for attempted carjacking in violation of 18 U.S.C. §§ 2119 and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  (*United States v. Che Lamar Romero*, Case No. 03-316, Sentencing J., Mar. 26, 2004, Docket No. 32.)

The Court will deny Romero's First Motion for Compassionate Release ("First Motion") because he fails to demonstrate that extraordinary and compelling reasons warrant a reduction of his sentence. The Court will deny Romero's alternative petitions because coram nobis relief is not available to federal prisoners and a writ of audita querela is not available where other remedies exist. The Court will also deny Romero's Second Motion for Compassionate Release ("Second Motion") because he has not exhausted his administrative remedies. Lastly, the Court will deny Romero's request to appoint counsel because he has demonstrated that he can sufficiently pursue his claims.

## BACKGROUND

In November and December of 2002, Romero set fire to two cars outside a Minneapolis home, caused significant damage to the residence by throwing two Molotov cocktails at it, and later placed a homemade bomb at a second home. (PSR ¶¶ 8–11 (on file with Court).) On May 31, 2006, Romero pleaded guilty to aiding and abetting arson, aiding and abetting possession of an unregistered firearm, aiding and abetting illegal manufacture of a firearm, and aiding and abetting possession of a firearm with no serial number. (Plea Agreement, May 31, 2006, Docket No. 71.) Prior to pleading guilty, Romero had a substantial criminal history including convictions for drug smuggling, aggravated robbery, assault, burglary, felon in possession of a firearm, and attempted carjacking. (PSR ¶¶ 53–61.) Romero was sentenced to a 72-month term of imprisonment. (Sentencing J. at 2, Mar. 29, 2007, Docket No. 105.). Romero's

projected release date is October 25, 2022.  *Inmate Locator*, Fed. Bureau of Prisons,

https://www.bop.gov/inmateloc (last visited Sept. 14, 2022).

In July 2021, Romero filed his First Motion  claiming that (1) his health conditions

compel early release; (2) FCI-Marianna[2] mishandled the COVID-19 pandemic and failed

to provide him with adequate care; and (3) his conviction and sentence are unlawful

and his attorney provided ineffective assistance.[3]  (1st Mot. Compassionate Release at

5–8, 20–32, July 19, 2021, Docket No. 180.)  Specifically, Romero asserts that he was

diagnosed with a seizure disorder after he was sentenced.[4]  According to Romero, the

seizures began after he was kidnapped and suffered a concussion after being beaten in

the head with a gun.  (Gov.'s Sealed Ex. Opp. Mot. Compassionate Release ("Sealed

Ex.") at 186, Aug. 11, 2021, Docket No. 187; 1st Mot. Compassionate Release at 37–38.)

Romero's medical records also indicate that he contracted COVID-19 in January 2021.

(Sealed Ex. at 25.)  Romero reported minor symptoms while infected and asserts that

he suffers lasting effects—sometimes referred to as "long COVID"—such as chronic

fatigue and memory issues.  (*Id*. at 12; 1st Mot. Compassionate Release at 5.)  Despite

---

[2] Although Romero was located at FCI-Marianna when he filed his First Motion, Romero is currently on home confinement.  (Def.'s Reply Supp. 2nd Mot. Compassionate Release at 2–4, Aug. 15, 2022, Docket No. 197.)

[3] Romero has also made numerous requests for compassionate release to the Bureau of Prisons raising various claims including his medical conditions, the COVID-19 pandemic, the length of his sentence, and the conditions he faced while incarcerated.  (First Mot. Compassionate Release, Ex. 3 16-23, July 19, 2021, Docket No. 180-3.)  All have been denied.  *Id*.

[4] Although Romero did not provide copies of his medical records to substantiate his claims, the United States provided copies that corroborate his diagnosis.  (Gov.'s Sealed Ex. Opp. Mot. Compassionate Release at 7–8, 182–83, Aug. 11, 2021, Docket No. 187.)

his apparent concern regarding the COVID-19 pandemic, Romero refused the COVID-19 vaccine when offered it in early January 2021.  (Sealed Ex. at 178.)

Romero's Second Motion is unrelated to his First Motion and states that he was attacked with a hypodermic needle and that part of the needle broke off in his arm. (2nd Mot. Compassionate Release at 2–3, June 30, 2022, Docket No. 194.)  Even though part of the needle remains in Romero's arm, his request to the Bureau of Prisons ("BOP") to have the remaining portion surgically removed was denied.  (*Id*.)  Romero therefore requests that the Court either (1) order the BOP to approve the surgery; (2) allow him to travel to Latin America for six months so that his relatives can cover the expense of a surgery; or (3) modify his home confinement conditions.  (*Id.* at 6–7.)

The United States opposes Romero's First Motion, arguing that it should be denied because his health-related claims are not extraordinary and compelling reasons warranting release and because a § 3582(c)(1)(A) motion is inappropriate to address his claims relating to his conviction and sentence.   (Govt.'s Resp. Opp. 1st Mot. Compassionate Release at 14–15, Aug. 11, 2021, Docket No. 186.)  Similarly, the United States opposes Romero's Second Motion because Romero has not exhausted his administrative remedies and the Second Motion is not properly before the Court and, even if it was properly before the Court, a § 3582(c)(1)(A) motion cannot provide the relief Romero requests.  (Govt.'s Resp. Opp. 2nd Mot. Compassionate Release at 2–3, July 25, 2022, Docket No. 196.)

**DISCUSSION**

### I.    COMPASSIONATE RELEASE

The First Step Act, passed in December 2018, amended the procedure for compassionate release.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)).  The law allows defendants, in addition to the BOP, to move for compassionate release.  18 U.S.C. § 3582(c)(1)(A).  However, a defendant may only bring such a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id*.

Once the Court receives a motion from the BOP or a motion from a defendant after administrative remedies have been exhausted, the Court may reduce the defendant's sentence after considering the "factors set forth in section 3553(a)," if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission provides that extraordinary and compelling reasons may exist when a defendant is suffering from a terminal illness or a serious physical or medical condition that substantially diminishes the defendant's ability to provide self-care.  U.S.S.G. § 1B1.13 cmt. n.1.

### A.  First Motion

The parties agree that Romero has made multiple requests to the BOP and that his First Motion for Compassionate Release is ripe for review.  (1st Mot. Compassionate Release at 7; Govt.'s Resp. Opp. 1st Mot. Compassionate Release at 11.)  Therefore, the Court finds that Romero has exhausted his administrative remedies as to his First Motion.

Turning to the merits of Romero's First Motion, the Court recognizes that the COVID-19 pandemic has placed an immense toll on the mental and emotional states of the entire country and that incarcerated individuals are no exception and have faced potentially greater risks than the general public.  However, none of Romero's reasons are sufficiently extraordinary and compelling such that the Court can reduce his sentence.

First, Romero's seizure disorder and alleged lingering effects of COVID-19 have been treated by the BOP.  (Sealed Ex. at 12, 106, 127, 133, 145.)  Moreover, Romero's medical records indicate that his conditions do not affect his ability to provide selfcare and that he is able to attend to the activities of daily living.  (*Id*. at 5.).  While the Court does not diminish Romero's conditions, they simply are not extraordinary and compelling reasons warranting a reduction in his sentence.[5]

---

[5] Similarly, Romero's alleged vulnerability to COVID-19 due to his underlying health conditions does not warrant his release.  Romero was offered, but refused, the COVID-19 vaccine. (Sealed Ex. at 178.)  Regardless of his reasons for doing so, the Court is not persuaded that his health conditions and vulnerability to COVID-19 are extraordinary and compelling enough to warrant a reduction in his sentence when Romero voluntarily chooses to reject the vaccine and remain at an elevated risk of infection.  *See, e.g., United States v. Deleston*, Cr. No. 15-113, 2021 WL 1731779, *2 (S.D.N.Y. May 3, 2021) (collecting cases holding that refusing effective vaccination weighs against release).

Second, Romero's allegations that FCI-Marianna mishandled the COVID-19 pandemic cannot support a reduction in his sentence.[6]  The Court recognizes that prison conditions are more difficult than usual for most inmates because of the COVID-19 pandemic.  However, Romero has not alleged or demonstrated that the restrictions have uniquely or particularly affected him such that his circumstances are extraordinary and compelling or should alter the Court's conclusion that the nature and circumstances of Romero's crime warrant a sentence of 72 months.

Third, a compassionate release motion is not the proper vehicle for Romero to challenge the lawfulness of his conviction and sentence.  The Eighth Circuit has explicitly held that incarcerated individuals generally must challenge their conviction and sentence through a 28 U.S.C. § 2255 motion rather than a motion for compassionate release.  *United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020); *see also Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010).

Because no extraordinary or compelling circumstances warrant a reduction in Romero's sentence, the Court need not consider whether the potential reduction would comport with the § 3553(a) factors.  Accordingly, the Court will deny Romero's First Motion for Compassionate Release.

### B.  Second Motion

---

[6] To the extent Romero's claims allege violations of his constitutional rights, such claims must be appropriately addressed and remedied through civil litigation and not through a motion for compassionate release.  The Court therefore only addresses Romero's arguments as they are relevant to 18 U.S.C. § 3582(c)(1)(A).

In contrast to Romero's First Motion, both Romero and the United States agree that Romero did not exhaust his administrative remedies before bringing his Second Motion. (Def.'s Reply Supp. 2nd Mot. Compassionate Release at 1–3, Aug. 15, 2022, Docket No. 197; Govt.'s Resp. Opp. 2nd Mot. Compassionate Release at 1–3.) Although Romero acknowledges that "[t]he issues raised herein may be different," he contends that "this does not prevent the Court from styling this second motion as an amendment to his original request for compassionate release." (Def.'s Reply Supp. 2nd Mot. Compassionate Release at 1.)

Even if the Court complied with Romero's request to style his Second Motion as an amendment to his First Motion, the Court would still be required to deny the relief sought because Romero has not exhausted his administrative remedies. The Eighth Circuit has noted that the requirement to exhaust one's administrative remedies before bringing a motion for compassionate release is a mandatory claim-processing rule that must be enforced when raised by an opposing party. *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (holding that a district court "was required to dismiss" a compassionate release when the defendant failed to exhaust his administrative remedies) (*citing United States v. Alam*, 60 F.3d 831, 832–33 (6th Cir. 2020); *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017)). Moreover, "the administrative exhaustion of an initial request for compassionate release [does not] serv[e] to discharge that requirement for subsequent requests based on different evidence and argument." *United States v. Mendoza*, No. 10-

313, 2020 WL 4018222, at *5 (D. Minn. July 16, 2020) (quoting *United States v. Jenkins*, No. 15-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020)) (internal quotation marks omitted).

In *Mendoza*, the court considered a similar factual scenario to the current case wherein the defendant amended his first motion for compassionate release—for which the defendant had properly exhausted his administrative remedies—but did not exhaust his administrative remedies for the claims added by the amendment. *Id.* at *3, 5–6. Because the defendant failed to exhaust his remedies, the court concluded that it lacked authority to consider his claims. *Id.* at *6; *see also United States v. Young*, No. 18-196, 2020 WL 5350295, at *3 (D. Minn. Sept. 4, 2020) (holding that the court was without authority to consider the defendant's new argument for compassionate release because he was obligated to first submit an amended request to his warden to consider the additional basis).

Accordingly, whether the Court considers Romero's Second Motion an amendment to the First Motion or an individual motion, the Court is without authority to consider the Second Motion because he has failed to exhaust his administrative remedies. The Court will therefore deny Romero's Second Motion.

## II. CORAM NOBIS

Romero alternatively petitions for a writ of error coram nobis. However, "[c]oram nobis lies only where the petitioner has completed his sentence and is no longer in federal

custody, is serving a sentence for a subsequent state conviction, or has not begun serving the federal sentence under attack." *United States v. Little,* 608 F.2d 296, 299 n.5 (8th Cir. 1979) (citations omitted); *see also United States v. Kindle,* 88 F.3d 535, 536 (8th Cir. 1996); *Zabel v. United States Attorney*, 829 F.2d 15, 17 (8th Cir. 1987) (per curiam). Romero has not completed his sentence and is in federal custody and is thus precluded from coram nobis relief. The Court will therefore deny Romero's petition.

### III.   AUDITA QUERELA

Romero also petitions the Court for a writ of audita querela. "A writ of audita querela is not available where other cognizable remedies exist." *United States v. Feist*, 346 F. App'x. 127, 128 (8th Cir. 2009) (per curiam) (citing *United States v. Richter*, 510 F.3d 103, 104 (2d Cir. 2007) (per curiam)). Typically, incarcerated individuals "must challenge a conviction or sentence through a § 2255 motion." *Lopez-Lopez*, 590 F.3d at 907; *see also* 28 U.S.C. § 2255(a) (providing that an incarcerated individual alleging "that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

Because Romero challenges the constitutionality of his sentence and conviction, a motion pursuant to 28 U.S.C. § 2255 is the appropriate vehicle to seek his requested relief. As a result, a writ of audita querela is not available and the Court will deny the petition.

### IV.   APPOINTMENT OF COUNSEL

Romero additionally brings a Motion to Appoint Counsel to assist his post-conviction relief efforts.  Generally, "[t]here is no right to counsel in postconviction proceedings." *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").  Rather, appointment of counsel for postconviction proceedings is discretionary.  *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997).  The Court may further consider factors including "the factual and legal complexity of the case, and the petitioner's ability both to investigate and to articulate his claims without court appointed counsel." *Id.*

Romero has not articulated any genuine obstacle preventing him from investigating and articulating his claims on his own.  In fact, Romero's current motions demonstrate that he can perform the required tasks to bring his claims.  *See United States v. Oatman,* No. 15-235, 2021 WL 4167674, at *2 (D. Minn. Sept. 14, 2021) (denying motion to appoint counsel for assistance with post-conviction proceedings because "[t]he instant motion shows that Defendant is able and willing to perform legal research and to communicate with the Court").  The Court will therefore deny Romero's Motion for Appointment of Counsel.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's First Motion for Compassionate Release, Motion for Appointment of Counsel, and Petitions for Writs of Audita Querela and Coram Nobis [Docket No. 180] are **DENIED**; and

2.  Defendant's Second Motion for Compassionate Release [Docket No. 194] is **DENIED**.

DATED:  October 6, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge